UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In re:                                                                   Bankruptcy No. 07-30658
                                                                         Chapter 7
Frank G. Lucier and
Kimberla K. Lucier,

                    Debtors.
_____/

**MEMORANDUM AND ORDER**

Debtors Frank G. Lucier and Kimberla K. Lucier filed for relief under Chapter 13 of the United States Bankruptcy Code on August 9, 2007. On August 23, 2007, they filed their Chapter 13 plan. Credit Purchase Acceptance Corporation (CPAC) filed an objection to the plan on September 25, 2007, and a motion for relief from stay on October 3, 2007. Debtors filed an amended Chapter 13 plan on October 31, 2007. The Court held a hearing on both the objection to confirmation of the plan and the motion for relief from stay on November 1, 2007.

The facts in this case are not in dispute. Debtor Frank G. Lucier entered into a retail installment contract and security agreement dated March 11, 2006, secured by a 2000 Ford Windstar LX. Under the contract, Debtor is to make bi-weekly payments of $164.84. The annual percentage rate is 19.950%. Debtors fell behind on the payments to CPAC and owed $354.40 as of the petition date. The outstanding balance was $8,894.37. Debtors valued the vehicle in their schedules at $7,610.00. In their amended Chapter 13 plan, Debtors propose to pay "$214.53 Avg." per month over 52 months at 10% interest on the outstanding balance. They propose to pay $178.98 per month during the first two months of the plan at 8% interest on the prepetition arrearage.

CPAC objects to the interest rate, the monthly payment, the repayment term, and the plan's failure to include a provision for CPAC's reasonable attorney fees.[1] CPAC asserts that these aspects of the plan violate section 1325(a)(5)(B)(ii) and render the plan infeasible in contravention of section 1325(a)(6).  Lastly, CPAC seeks a "drop dead" provision in the plan in the event of default.

Section 1322(b)(2) of the Bankruptcy Code permits a chapter 13 plan to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C § 1322(b)(2).  The modifications may include terms such as the amount of the payments on the claim, the timing of the payments and the finance charges. See In re Hopkins, 371 B.R. 324, 325 (Bankr. N.D. Ill. 2007).

The extent to which a Chapter 13 plan can modify a secured claim depends on section 1325. Section 1325, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), provides that the court shall confirm a plan if certain conditions are met.  Plan treatment of allowed secured claims is found in section 1325(a)(5):

(a) Except as provided in subsection (b), the court shall confirm a plan if—
. . . .
  (5)  with respect to each allowed secured claim provided for by the plan—
    (A)  the holder of such claim has accepted the plan;
    (B)  (i)  the plan provides that—
        (I)  the holder of such claim retain the lien securing such claim until the earlier of—
          (aa)  the payment of the underlying debt determined under nonbankruptcy law; or
          (bb)  discharge under section 1328; and
        (II)  if the case under this chapter is dismissed or converted without completion of the plan, such lien

---

[1] CPAC also objected to the original plan because payments were not scheduled to begin until the second month of the plan.  The amended plan, however, provides for payments to CPAC to begin in the first month of the plan, and the Court deems this basis for objection resolved.

        shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
- (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
- (iii) if—
  - (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
  - (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or

(C) the debtor surrenders the property securing such claim to such holder [.]

11 U.S.C. § 1325(a)(5). Following section 1325(a)(9) is what has become known as the "hanging paragraph," which provides:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

11 U.S.C. § 1325 (a)(9). Section 506 provides for the bifurcation of a secured creditor's claim into secured and unsecured portions based on the value of the collateral. See 11 U.S.C. § 506(a)(1).

  A Chapter 13 plan may treat secured creditors in one of three ways as described in section 1325(a)(5). Debtors may obtain acceptance of the plan from the creditor, surrender the collateral, or propose to keep the collateral and make payments over the life of the plan that total not less than the allowed amount of the creditor's secured claim. See 11 U.S.C. § 1325(a)(5)(A)-(C). If the plan proposes that the debtors will keep the collateral and pay the creditor over time, and the creditor is not a "910-creditor," the debtors may bifurcate the claim into secured and unsecured portions based

3

on the value of the collateral, pay the secured portion through the plan, and treat the unsecured portion in the same manner as other unsecured claims. See Capital One Auto Finance v. Osborn (In re Osborn), 363 B.R. 72, 75 (B.A.P. 8th Cir. 2007). According to the hanging paragraph, however, 910-creditors' claims may not be bifurcated. Id. Instead, the allowed secured claim is the full amount owed to the creditor as of the date of the bankruptcy. Id. To be confirmed, the plan must provide for payment of the full amount of the claim, with interest. Id.

The appropriate rate of interest to be applied under section 1325(a)(5)(B)(ii) is the "prime-plus" rate prescribed by the Supreme Court in Till v. SCS Credit Corp., 541 U.S. 465 (2004).[2] The prime-plus rate is determined using the "formula approach." This approach begins by looking to the national prime rate, reported daily in the press, which reflects the financial market's estimate of the amount a commercial bank should charge a creditworthy commercial borrower to compensate for the opportunity costs of the loan, the risk of inflation, and the relatively slight risk of default. Till, 541 U.S. at 478-79. Because bankrupt debtors typically pose a greater risk of nonpayment than solvent commercial borrowers, the approach then requires the court to adjust the prime rate accordingly. Id. at 479. The appropriate size of that risk adjustment depends on such factors as the circumstances of the estate, the nature of the security, and the duration and feasibility of the reorganization plan. Id. Starting from a concededly low estimate and adjusting upward places the evidentiary burden squarely on the creditor. Id. In adopting the formula approach for determining

---

[2] Although Till is a pre-BAPCPA case, most courts that have considered the issue have held that Till remains valid under BAPCPA because section 1325(a)(5)(B)(ii) remains unchanged under BAPCPA. See In re Phillips, 362 B.R. 284, 306 (Bankr. E.D. Va. 2007) (listing cases and concluding that "the overwhelming majority" of courts apply the Till rate post-BAPCPA).

4

the prime-plus rate as the proper method for determining interest under section 1325(a)(5)(B)(ii), the Supreme Court expressly rejected the presumptive contract interest rate approach. Id. at 477.

The Supreme Court in Till did not decide the proper scale for risk assessment. It did, however, instruct courts to select a rate "high enough to compensate the creditor for its risk but not so high as to doom the plan." Id. at 480. It further suggested that if a court determines that the likelihood of default is so high as to necessitate an "eye-popping" interest rate, the plan probably should not be confirmed. Id. at 480-81.

Applying the formula approach in this case, the Court begins with the national prime rate. The parties did not stipulate as to the prime rate, but, as stated by the Supreme Court in Till, the prime rate is reported daily in the press. See id. at 478. As of November 28, 2007, the WSJ (Wall Street Journal) prime rate was 7.50%.[3] At the hearing on the matter, CPAC argued that risk adjustment in this case should be considerable because Debtor Frank Lucier has 17 judgments and 5 tax liens against him. CPAC did not offer any evidence regarding Debtors' financial history or other risk factors, but Debtors' Statement of Financial Affairs lists 15 judgments and 2 garnishments within the year immediately preceding the bankruptcy filing. Debtors conceded a willingness to pay a 15% interest rate, and the Court agrees that an interest rate of 15% adequately compensates CPAC for its risk. To the extent that CPAC objects to the 10% interest rate provided in Debtors' amended Chapter 13 plan, the objection is sustained.

CPAC also objects to the monthly payment. The amended Chapter 13 plan proposes to pay "$214.53 Avg." Section 1325(a)(5)(B)(iii)(I) provides that property distributed in the form of

---

[3] See http://www.bankrate.com/ust/ratehm.asp (visited December 4, 2007).

periodic payments shall be in equal monthly payments. Accordingly, Debtors may not propose an average monthly payment, and the objection is sustained.

CPAC also objects to the repayment term. Debtors' amended Chapter 13 plan is consistent with sections 1322(b)(2) and 1325(a)(5), however, and the objection is overruled.

CPAC next objects to the amended Chapter 13 plan because it fails to provide for CPAC's attorney fees. Section 506(b) allows creditors to obtain attorney fees if the creditor is oversecured. Although CPAC is oversecured, the hanging paragraph of section 1325(a)(9) provides that section 506 shall not apply to a 910 creditor such as CPAC. The objection is overruled.

Lastly, CPAC seeks a "drop dead" provision in the plan in the event of default. Most courts approve "drop dead" clauses when the parties agree to them. See In re Kennedy, 177 B.R. 967, 975 (Bankr. S.D. Ala. 1995). If the parties don't agree, however, both are left to their statutory remedies. Id. Neither Section 1325 nor any other section of the Bankruptcy Code requires such relief to be given to a secured creditor by a debtor. The objection is overruled.

The remaining issue before the Court is CPAC's motion for relief from stay under 11 U.S.C. § 362. CPAC argues relief from stay should be granted for cause including the lack of adequate protection of CPAC's interest in the collateral.

A court may modify the stay "for cause, including the lack of adequate protection of an interest in property of such party in interest[.]" 11 U.S.C. 362(d)(1). To obtain relief under section 362(d)(1), a creditor must establish a debt, an interest in property of the estate, and a lack of adequate protection of the creditor's interest in the property. See Ginter v. Alliant Bank (In re Ginter), 349 B.R. 193, 196 (B.A.P. 8th Cir. 2006). In this case, there is no dispute that CPAC is owed a debt and has an interest in property of the estate. The only issue is whether CPAC's interest

6

is adequately protected. If Debtors pay CPAC the prepetition arrearage, CPAC will be adequately protected. Once Debtors achieve confirmation of their Chapter 13 plan, the plan payments, including 15% interest, will provide adequate protection for CPAC.

Based on the foregoing, CPAC's objections as to the interest rate and the monthly payment amount in the amended Chapter 13 plan are sustained. CPAC's other objections are overruled. Debtors' amended Chapter 13 plan filed October 31, 2007, will be approved subject to these modifications:

1. The provision for the prepetition arrearage must be deleted as it will be paid as adequate protection to CPAC prior to confirmation.

2. The plan must provide CPAC with 15% interest on its claim.

3. The plan must provide for equal monthly payments.

Debtors shall have 10 days to filed a modified plan consistent with the above specifications. If Debtors make the relatively minor modifications listed above, the plan will comply with all the provisions of the Bankruptcy Code and will be confirmed without further hearing.

Credit Purchase Acceptance Corporation's motion for relief from stay will be GRANTED unless Debtors pay CPAC the amount of the prepetition arrearage within 10 days.

**SO ORDERED.**

Dated this December 5, 2007.

WILLIAM A. HILL, JUDGE
U.S. BANKRUPTCY COURT